UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Ronald Donald Dingle, | ) | C/A No. 4:13-2487-BHH-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Report and Recommendation |
| | ) | |
| Warden, Robert M. Stevenson, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, Ronald Donald Dingle (Petitioner/Dingle), is currently incarcerated at McCormick

Correctional Institution. Petitioner appearing *pro se*, filed his petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254[1] on September 13, 2013. Respondent filed a motion for summary

judgment on March 27, 2014, along with a return, supporting memorandum, and exhibits. (Docs.

#34). The undersigned issued an order filed March 28, 2014, pursuant to Roseboro v. Garrison, 528

F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the

possible consequences if he failed to respond adequately. (Doc. #35). Petitioner filed a response on

April 17, 2014. (Doc. #40).


## I.  PROCEDURAL HISTORY

The lengthy procedural history as set forth by the Respondent in his memorandum has not

_____

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate
Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 19.02 (B)(2)(c),
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

been seriously disputed by the Petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history as set forth by the Respondent, in part.

Petitioner is currently confined at the McCormick Correctional Institution in the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Sumter County. Petitioner was initially indicted by the Sumter County Grand Jury during the March 1993 Term of the Sumter County Court of General Sessions for one count of Assault and Battery with Intent to Kill, two counts of Possession of a Weapon During the Commission of a Violent Crime, two counts of Possession of a Sawed-Off Shotgun, one count of Burglary, First Degree, and one count of Murder ( 1993-GS-43-312), (Attachment No. 3). During the August 1993 Term of the Sumter County Court of General Sessions, the indictment was amended to add one count of Kidnapping and one count of Pointing a Firearm. (App. 262-65, Attachment No. 4). The State filed a Notice of Intent to Seek the Death Penalty in this case on July 29, 1993. (See App. 7-9, 22). Petitioner was represented by James E. Bell, Esquire, James A. Stoddard, Esquire, and Dwight Moore, Esquire . (App. 1-133). The State was represented by Solicitor Wade Kolb and Assistant Solicitor Suzanne Mayes, both of the Third Judicial Circuit 's Solicitor's Office. Id.

On April 17, 1995, Petitioner waived his right to a trial by jury and pleaded guilty to all of the charges before the Honorable Ralph King Anderson, Circuit Court Judge. Id. Prior to the guilty plea, the State and the defense reached an agreement whereby Petitioner would receive a life sentence, but would be eligible for parole after thirty years confinement. (App. 7-15). Specifically, the parties agreed that Petitioner would plead guilty to all of the charges, and after a finding by the court of the existence of aggravating circumstances alleged in the notice, the State would recommend Petitioner be sentenced to life. (App. 27-8). Along with this agreement, the parties also agreed that

2

a then- active sentence for trafficking in crack cocaine would be vacated by consent, and Petitioner would subsequently be sentenced on all of the charges in the indictment and for the trafficking conviction. (App. 27-8). After a waiver of the twenty-four hour waiting period for sentencing and presentations from both the State and defense, Judge Anderson found beyond a reasonable doubt that the murder was committed during the crimes or acts of kidnapping, burglary, and physical torture. (App. 108).

Judge Anderson sentenced Petitioner to confinement for life for the murder conviction, not being eligible for parole until the service of at least thirty years; twenty years confinement for the assault and battery with intent to kill conviction, consecutive to the other counts in the indictment; five years confinement for the first possession of a weapon during the commission of a violent crime conviction, consecutive to the other counts in the indictment; ten years confinement for the possession of a sawed off shotgun conviction, consecutive to the other counts in the indictment; life confinement for the first degree burglary conviction, consecutive to the other counts in the indictment; five years confinement for the pointing a firearm conviction, consecutive to the other counts in the indictment; five years confinement on the second possession of a firearm during the commission of a violent crime conviction, consecutive to the other counts in the indictment; five years confinement on the second possession of a firearm during the commission of a violent crime conviction, consecutive to the other counts in the indictment; and ten years confinement for the second possession of a sawed off shotgun conviction, consecutive to the other counts in the indictment . (App. 109-10).  As to the trafficking in crack cocaine conviction, Petitioner's sentence was vacated, and he was sentenced to three years confinement and ordered to pay a $25,000 fine. (App. 111-12,130). The sentence was concurrent to the other sentences imposed. (App.130). There

3

was no direct appeal of the original plea hearing.

**First PCR Action**

On February 15, 1996, Petitioner filed an Application for Post-Conviction Relief ("PCR") (1996-CP-43-113), asserting claims of ineffective assistance of counsel and that his guilty plea was not knowingly, intelligently, and voluntarily made. (Attachment No. 5). Specifically, Petitioner claimed that counsel failed to conduct an adequate pretrial investigation into the facts and circumstances of his case. Second, Petitioner alleged counsel failed to advise him of the right to a Denno hearing to determine the voluntariness of his statement to police. Third, he argued counsel failed to advise him of the right to challenge the statements made against him. The State served its Return on September 30, 1996. (Attachment No.6).

An evidentiary hearing in this PCR action was held before the Honorable Alexander S. Macaualay, Circuit Court Judge, on June 2, 1997.[2] Petitioner was present and was represented by A. Paul Weissenstein, Jr., Esquire. The State was represented by Assistant Attorney General Barbara M. Tiffin. The PCR Court filed its Order (signed on December 5, 1997) granting relief on December 15, 1997. ( ROA[3] Volume 2, tab 9, p. 134-36).

In its Order, the PCR court found that, at the time of his plea, Petitioner's attorneys told Petitioner that, as a result of a plea, he would be eligible for parole in thirty (30) years which was the earliest parole eligibility for the longest sentence imposed, life imprisonment for murder. Id. His attorney at the plea apparently believed this to be true even though they were consecutive sentences

---

[2] Respondent asserts that there is no transcript to the PCR evidentiary hearing that was held in 1997. No appeal was taken from the PCR action.

[3] ROA is abbreviation used for record on appeal.

4

on all of the pleas. Id. Petitioner testified that he pleaded guilty in reliance on the accuracy of his

counsel's advice. Id. The PCR court held as follows:

> Furthermore, during the course of the guilty plea, there were
> numerous instances where the sentencing outcome was discussed. For
> example, at page 29 of the transcript, the Court stated that, "you will
> not be eligible for parole before thirty (30)   years." (Lines 8 and 9).
> At page 39, beginning at Line 22, the Court stated, " To sum up, the
> most you can get on that count for murder is the death penalty. But
> the least you could get is life imprisonment. And that will be a thirty
> (30) year life imprisonment before you are eligible for parole." Both
> of those statements were made prior to the waiver of the twenty-four
> (24) hour waiting period. During the actual sentencing phase, the
> Court again advised that, "defendant shall not be eligible for parole
> until the service of at least thirty (30) years." Page 108, Lines 15-17.
>
> A plea must be entered into with a full understanding of the
> consequences, and must be knowingly and voluntarily made. Dover
> v. State, 304 S.C. 433, 405 S.E.2d 391 (1991). (ROA 135). In this
> case, his sentencing attorneys freely and fully admitted that they
> advised him that, whether he was sentenced to consecutive or
> concurrent sentences for the various charges against him, he would
> still become eligible for parole  after thirty (30) years. After he began
> serving his sentence, Petitioner was advised that he would not be
> eligible for parole, but would have to serve each sentence
> consecutively.

(ROA 135).

The PCR Court took this matter under advisement in order to ascertain from the Department

of Corrections when Petitioner would first become eligible for parole. (ROA 135). The PCR Court

had been advised by the Department of Corrections that because of the manner in which Petitioner

was sentenced, he would not be eligible for parole. Id.

The PCR Court found that Petitioner's pleas of guilty were influenced by information

provided to him by his counsel and the sentencing judge. (ROA 135). The PCR Court recognized

that the attorneys representing Petitioner at the time of his guilty plea were attorneys who practiced

in General Sessions on a regular basis and had attempted to investigate the consequences of the plea. (ROA 135-36). The PCR court found, "[h]owever, the information that they obtained and relayed to Petitioner was different than the actual consequence of his pleas. See Cradock v. State, Op. No. 24690 (S.C. Sup.Ct. filed Sept. 22,1997) (Davis Adv. Sh. No. 27 at 13)." (ROA 136). Therefore, the court ordered that the sentences imposed on Petitioner were vacated and remanded for sentencing consistent with the intent of the plea agreement or for a new trial citing to Jordan v. State, 297 S.C. 52, 374 S.E.2d 683 (1988).(ROA 136). It was further ordered that Petitioner would retain or be appointed new counsel experienced in criminal defense matters, for the purposes of representing him during resentencing or a new trial. (ROA 136). Additionally, it was ordered that Petitioner would remain incarcerated with the Department of Corrections, and the time served and to be served would be applied to any sentence that may ultimately be imposed on Petitioner on the charges. Id.

Nothing happened in Petitioner's case for several years following the filing of the PCR Court's Order. On March 17, 2003, a Notice and Motion to Enforce Judgment (Motion for Writ of Habeas Corpus) was filed on Petitioner's behalf, specifically requesting Petitioner's immediate release. (Attachment No. 7). After filing this Motion, Petitioner retained Tara Dawn Shurling, Esquire to represent him in further proceedings. The Motion to Enforce Judgment was withdrawn by letter dated April 8, 2004. (Attachment No. 8).

On May 19, 2004, Petitioner served a notice of motion demanding a speedy trial and a motion for speedy trial in the Sumter County Court of General Sessions. (ROA 137-43). The motion was heard by the Honorable Howard P. King, Circuit Court Judge, on July 28, 2005. (ROA144-74; Attachment No.10). Petitioner was present and was represented by Tara Dawn Shurling, Esquire. Id. The State was represented by Deputy Solicitor J. Dudley Saleeby of the Third Judicial Circuit. Id.

6

Judge King filed his Order regarding the Motion on December 30, 2005. (ROA 175-80). In the Order, Judge King noted the following:

A guilty plea, along with the resulting waiver of fundamental constitutional rights, is valid only if it is made voluntarily, knowingly and intelligently. Boykin v. Alabama, 395 U.S. 238 (1969); Pittman v. State, 337 S.C. 597, 534 S.E.2d 623 (1999). When a defendant enters a guilty plea in reliance on a plea bargain that is accepted by the court, due process requires the plea bargain be honored. Santobello v. New York, 404 U.S. 257 (1971); Reed v. Becka, 333 S.C. 676, 511S.E.2d 396 (Ct. App. 1999). If it is not, either of two remedies is available: the court can (1) require specific performance of the plea agreement or, alternatively, (2) allow the defendant to withdraw his guilty plea altogether and start over. . . .

Dingle claims that it was his choice as to whether he is entitled to a new trial or specific performance of the plea bargain and that he wishes a new trial because performance of the plea bargain would be either impossible or insufficient. This Court disagrees. In my view, he is entitled to the benefit of his bargain and this Court can enter such orders as will ensure that he gets exactly what he bargained for and agreed to at the time of the entry of his guilt y pleas. Id.  Indeed, Judge Macaulay's Order (at from the first PCR)  provided that the matter be "remanded for sentencing consistent with the intent of the plea agreement .... " That Order is the law of the case.

Petitioner contends that, if the remedy was limited to a guilty plea, he will be deprived of the benefit of the bargain in two regards. First, because Judge Macaulay's Order left the Lee County conviction for trafficking in crack cocaine untouched, Petitioner currently has one conviction for a violent offense on his record. If he pleads guilty to the Sumter County charges and is sentenced separately, he will have subsequent convictions for violent offenses which will trigger parole ineligibility pursuant to Section 24-21-640 of the South Carolina Code. This arguemnt overlooks the fact that this Court can order the South Carolina Department of Corrections (hereinafter "DOC") and the South Carolina Department of Probation, Parole, and Pardon Services (hereinafter "DPPPS") to disregard any convictions for violent offenses and to base Dingle's eligibility for parole based on concurrent sentences as if he had no subsequent convictions for violent offenses.  In other words, this Court can order those agencies to give Dingle the benefit of his bargain.

7

(ROA 177-78).

Petitioner contended that the Court lacked jurisdiction to take any action whatsoever with respect to the Lee County convictions. Id. He further contended that the conviction stood as an obstacle to parole eligibility, one of the promised benefits of the plea bargain. Id. Petitioner also contended that he was promised a second benefit if he pleaded guilty: the State would not seek the death penalty for the murder charges. (ROA 178). The PCR court discussed Roper v. Simmons, 125 S.Ct. 183 (2005), which held that the Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed. (ROA 178).[4] However, the court held that the efficacy of his plea should be viewed based on the law as it existed on April 17, 1995, not on the change in the law ten (10) years after his plea was entered. (ROA 179).  The court concluded that the specific performance to which Petitioner was entitled was based upon the facts and law as they existed at the time of the entry of the guilty plea. Id.

Therefore, it was ordered that in accordance with the Order of the Honorable Alexander S. Macaulay, dated December 5, 1996, the Defendant, Ronald Donald Dingle, was sentenced to life imprisonment for murder under the law as it existed on April 17, 1995, and specifically with a parole eligibility of 30 years; and it was further ordered that the consecutive sentences imposed by Judge Anderson for assault and battery with intent to kill (20 years), two counts of possession of a weapon during a violent crime (5 years each), two counts for possession of a sawed-off shotgun (10 years), first degree burglary (life), and pointing a firearm (5 years) were re-imposed and changed to run concurrent with each other and concurrent with the murder conviction. (ROA 179). The sentence for the Lee County trafficking charge was concurrent, but the Court confirmed that that sentence was

---

[4] Petitioner was 17 years of age at the time of the crimes in question. (ROA 178).

to run concurrent with all the Sumter County charges. Id. It was further ordered that the South Carolina Department of Corrections and the South Carolina Department of Probation, Parole, and Pardon Services would consider only the conviction for murder for purposes of computing parole eligibility and was to disregard all other convictions for purposes of determining parole eligibility. (ROA 179). Additionally, it was ordered that the court reserved jurisdiction to amend its Order in any manner necessary for DOC and DPPPS to carry out the intent expressed herein to ensure that Petitioner was eligible for parole after thirty (30) years. (ROA 180).

Petitioner filed a motion to alter or amend pursuant to Rule 59(e) SCRCP on January 13, 2006. (ROA 181-85). By order filed February 9, 2006, the re-sentencing court denied the motion to alter or amend. (ROA 187-94).

In its order denying the motion to motion to alter or amend, the re-sentencing court stated the intent of the plea agreement was abundantly clear. In exchange for his plea of guilty on the specified charges, Petitioner would avoid both the possibility of a death sentence, as well as parole ineligibility based upon a prior conviction of a violent crime. (ROA 190). He would then be parole eligible- not guaranteed-after thirty (30) years of service. Id.

Direct Appeal After Re-Sentencing

Petitioner timely filed and served a Notice of Appeal on February 16, 2006. (Attachment No. 11). On appeal, Petitioner was represented by Tara Dawn Shurling, Esquire. (See Attachment No. 12). By Order filed by the South Carolina Supreme Court on March 16, 2006, the appeal was certified for review by the South Carolina Supreme Court. (Attachment No. 12). Petitioner's appeal was perfected with the filing of a Final Brief of Appellant. (Attachment No. 13). In the Final Brief,

Petitioner asserted the trial judge abused his discretion in refusing to allow Petitioner to withdraw his guilty plea. The State submitted a Final Brief of Respondent. (Attachment No. 14).

In a published opinion filed February 27, 2008, the South Carolina Supreme Court affirmed Petitioner's convictions and sentences as modified. State v. Dingle, 376S.C. 643, 646, 659 S.E.2d 101, 103 (2008) (Attachment No. 15). The South Carolina Supreme Court addressed the appeal as follows:

> Dingle argues the circuit court abused its discretion by not allowing him to withdraw his guilty pleas and have a new trial because: (1) resentencing him on the Sumter County convictions would amount to a "subsequent conviction" such that he would be ineligible for parole anyway; and (2) it was his choice as to whether he was resentenced or entitled to a new trial, especially in light of the fact that he no longer had the full benefit of the original bargain because the death penalty was later found to be unconstitutional for minors. We disagree.
>
> In his first argument, Dingle focuses on the language "second or subsequent conviction" in the statute to argue that resentencing him on the Sumter County charges would trigger the no-parole clause in the statute. As will be further discussed, Dingle has misinterpreted the statute.
>
> Parole is a privilege, not a matter of right. Sullivan v. South Carolina Dep't of Corr., 355 S.C. 437, 443 n. 4, 586 S.E.2d 124, 127 n. 4 (2003). Although a court's final judgment in a criminal case is the pronouncement of the sentence, the parole board has the sole authority to determine parole eligibility separate and apart from the court's authority to sentence a defendant. State v. McKay, 300 S.C. 113, 115, 386 S.E.2d 623, 623–24 (1989). However, the court may order the parole board to structure a sentence in such a way as to carry out the intent of the parties. Tilley v. State, 334 S.C. 24, 28–29, 511 S.E.2d 689, 692 (1999) (ordering the parole board to consider the five-year mandatory term for possession of a firearm as being served first such that the prisoner would be considered eligible for parole as the parties had intended).
>
> This Court has the authority to interpret the parole statute. In interpreting statutes, the Court looks to the plain meaning of the statute and the intent of the Legislature. Hinton v. South Carolina Dep't of Prob., Parole, & Pardon Servs., 357 S.C. 327, 332, 592 S.E.2d 335, 338 (Ct.App.2004). As with any statute that is penal in nature, the Court must construe it strictly in favor of the defendant and against the State. Hair v. State , 305 S.C. 77, 79, 406 S.E.2d 332, 334 (1991) (construing in favor of the defendant the different time frames for parole eligibility found in the general parole

statute and in a statute regarding parole eligibility for burglary). The relevant portion of the parole statute provides: "The board must not grant parole nor is parole authorized to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in Section 16–1–60." S.C.Code Ann. § 24–21–640 (2007).

A clear reading of the underlying statute is that in order to trigger the no-parole language, a defendant must not only have a separate sentencing hearing, but he or she must also have a separate conviction. Dingle entered his pleas to both the Sumter County and Lee County charges in the same proceeding, and only his sentences, not his convictions, on the Sumter County charges were overturned by the PCR court. A clear reading of the statute indicates the Legislature's desire to punish subsequent offenders. To interpret the statute in such a way as to bar parole consideration where, as here, the sentence alone is overturned and remanded for resentencing would lead to an absurd result. Wade v. State, 348 S.C. 255, 259, 559 S.E.2d 843, 845 (2002) ("However, a court must reject a statute's interpretation leading to absurd results not intended by the Legislature."). Dingle's argument that the remand of his Sumter County sentences was a "subsequent conviction" rendering him ineligible for parole is erroneous, and specific performance of the plea bargain can still be accomplished.

Furthermore, the State has affirmatively stated its intent to comply with the plea bargain and does not intend to challenge Dingle's eligibility for parole. Thus, the State, and its various agencies, would be estopped from later asserting Dingle was ineligible for parole. See State v. Peake, 353 S.C. 499, 505, 579 S.E.2d 297, 300 (2003) (discussing whether the State was estopped to prosecute a defendant based on representations made by someone regarding a civil action). Citing cases that deal with breaches of plea agreements, Dingle next argues that he was entitled to choose between resentencing or a new trial because it "comports with this jurisdiction's recognition of the importance of contract principles in resolving plea agreement disputes." He also argues that he was entitled to choose a trial because he could never get the benefit of the original plea bargain where a motivating factor was to avoid a death sentence, and the death penalty was later ruled unconstitutional for minors.

It has long been established that state prosecutors "are obligated to fulfill the promises they make to defendants when those promises serve as inducements to defendants to plead guilty." Sprouse v. State, 355 S.C. 335, 338, 585 S.E.2d 278, 279 (2003) (citing Santobello v. New York, 404U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). Where a solicitor breaches a plea agreement, the United States Supreme Court has indicated two remedies: specific performance of the plea agreement; or allowing the defendant to withdraw his guilty plea. Santobello, 404 U.S. at 262 –63, 92 S.Ct. 495. As Dingle correctly notes, although South Carolina has not ruled on whether a defendant may elect the remedies when a solicitor breaches a plea agreement, some jurisdictions have held that it is the defendant's right to choose between the remedies in such a situation. See State v. Munoz, 305 Mont. 139, 23 P.3d

922, 928 (2001) (relying upon contract law principles to find a "non-breaching defendant must be afforded the initial right to choose from available remedies where the State breaches a plea agreement"); State v. Miller, 110 Wash.2d 528, 756 P.2d 122, 126–27 (1988) (noting that the prosecutor failed to carry his burden of demonstrating the defendant's choice of remedy was unjust).

However, in the instant case, the State did not violate the terms of the agreement: in exchange for Dingle's plea, they did not seek a death sentence and they agreed to structuring the sentence such that he would still be parole eligible. It was only the way the plea judge structured the sentence that rendered Dingle parole ineligible. Because the State did not violate the agreement, the question of election of remedies does not apply.

Finally, there is no merit to Dingle's argument that he did not get the benefit of the bargain because the death penalty later became unconstitutional for minors. See Roper v. Simmons, 543 U.S. 551, 575, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (holding capital punishment for persons under the age of eighteen when the crimes were committed violated the Eighth and Fourteenth Amendments). Dingle still received the benefit of his bargain when the parties agreed to structure the sentence such that he would be parole eligible. All the parties attempted to accomplish that goal. By remanding Dingle's Sumter County sentences for resentencing such that he will be parole eligible, Dingle gets the benefit of his bargain. Because the plea agreement can faithfully be enforced and specific performance promotes judicial economy, we find the circuit court did not abuse its discretion in ordering resentencing instead of a new trial.

However, as the parties note in their briefs, the circuit court made some errors in the original order, including ordering the parole board to only consider the murder conviction when determining parole eligibility and finding there was no retroactive application of the statute defining trafficking as a violent offense. See Sullivan v. State, 331 S.C. 479, 479, 504 S.E.2d 110, 111 (1998) (holding it is not a violation of the ex post facto clause for the Legislature to enhance punishment for an offense based on a prior conviction of the defendant, even though the enhancement provision was not in effect at the time of the previous offense); S.C. Code Ann. § 24–21–640 (2007) (noting that the parole board has the sole authority to determine parole eligibility based on the prisoner's complete record). Although we affirm the circuit court's decision to enforce the plea agreement by resentencing Dingle, we modify the court's order to the extent it made findings inconsistent with the above-cited law.

Dingle, 376 S.C. at 649-52, 659 S.E.2d at 104-06.

Petitioner subsequently filed a Petition for Rehearing. (Attachment No. 16). In the petition,

Petitioner argued the trial judge was without jurisdiction to grant the motion to vacate the Lee County trafficking conviction. The State filed a Return to the Petition for Rehearing. (Attachment No. 17). Petitioner also filed a Reply to the Return to Petition for Rehearing. (Attachment No. 18). By letter Order filed April 16, 2008, the South Carolina Supreme Court denied the Petition for Rehearing. (Attachment No. 19). The Remittitur was also issued on April 16, 2008. (Attachment No. 20).

Re-sentencing PCR[5]

On January 8, 2009, Petitioner filed an Application for Post-Conviction Relief (2009-CP-43-31), asserting three claims. (App. 135-50). First, Petitioner asserted he was entitled to a hearing to ascertain the applicability of Roper v. Simmons, 543 U.S. 551 (2005). (App. 140). Second, Petitioner contended his sentence was void and illegal. (App. 141-42). Third, Petitioner asserts that a fraud had been committed upon the court. (App. 143-44).

The State served its Return and Motion to Dismiss on June 17, 2009. (App. 238-244). On July 16, 2009, the PCR Court filed a Conditional Order of Dismissal. (App.245-50). In the Conditional Order, the PCR Court noted it had reviewed the pleadings and all relevant supporting documents. (App. 248).

The court found that the matter should be summarily dismissed because Petitioner had failed to comply with the filing procedures of the Uniform Post-Conviction Procedure Act. S.C. Code Ann. § 17-27-10 to –160 (2003) because the issues Petitioner raised were phrased as PCR claims but were direct appeal issues, thus, procedurally barred. Additionally, the court found the PCR application was

---

[5] Respondent refers to it as the second PCR action throughout its memorandum. The undersigned will refer to it as the re-sentencing PCR and re-sentencing PCR appeal in this report and recommendation.

barred under the doctrine of *res judicata* which prohibits subsequent actions by the same parties on the same issues. (App. 248). The court found Petitioner had a full opportunity to litigate all the allegations he attempted to raise in the PCR application in the direct appeal from his re-sentencing hearing. The PCR court gave Petitioner twenty days from the date of service of the conditional order in which to show why the dismissal should not become final.

On August 20, 2009, Petitioner filed an Amended Application for Post-Conviction Relief. (Supp. App. 28-31). In this Amendment, he asserted three claims. First, he submitted that trial counsel was ineffective in not asserting Roper applies retroactively. (Supp. App. 28). Second, he contended his guilty plea was involuntary because it was coerced by the possibility of a death sentence, which would have been incongruent with Roper. (Supp. App. 28-9). Third, Petitioner asserted that his attorney on resentencing was ineffective for not raising the retroactivity of Roper as an issue. (Supp. App. 29-31). On September 22, 2009, Petitioner filed another Amended Amendment to Application for Post-Conviction Relief. (Supp.  App. 32-50). On October 8, 2009, Petitioner filed an Amended Application for Post Conviction Relief. (App. 156-73; Supp. App. 51-68). In this Amendment, Petitioner asserted that Shurling failed to provide him with reasonable professional assistance by failing to raise the issue that the Sumter County General Sessions Court Judge, its officers, and the Attorney General violated the separation of powers doctrine in Article I, Section 8 of the South Carolina Constitution at the resentencing hearing and on appeal. (App. 157).

On February 1, 2010, Petitioner filed another Amended Application for Post Conviction Relief. (App. 174-98; Supp. App. 69-93). In this amendment, Petitioner raised three new claims. First, he contended he was denied due process due to irregularities in his prior proceedings. (App. 175-82). Second, Petitioner alleged there was newly discovered evidence to support a claim of

14

ineffective assistance of trial counsel. Specifically, he asserts that a court filing by the South Carolina Attorney General's Office in April 2008 supports his contention that there was a violation of the separation of powers doctrine. (App. 182-83). Third, Petitioner added to his claim that there was a fraud upon the court. (App. 183-86).

On March 4, 2010, Petitioner filed an Amended Amendment to Application for Post-Conviction Relief. (App. 199-218; Supp. App. 94-114). In this amendment, Petitioner raised three arguments. First, he contended there was a violation of his due process rights as guaranteed by the 14th Amendment to the United States Constitution because Roper v. Simmons was not applied retroactively in his case. (App. 199-213). Second, Petitioner argued counsel (Shurling) was ineffective for not litigating his due process claim based upon the prior courts' failure to retroactively apply Roper v. Simmons. (App. 213-14). Third, Petitioner asserted trial counsel was ineffective for failing to have a twenty year plea agreement for manslaughter with all other offenses to run concurrently enforced when such an offer was made after Petitioner suffered a severe injury while in jail in Sumter County. (App. 215-16). On March 17, 2010, Petitioner filed another Amended Application for Post-Conviction Relief. (App. 219-37). This amendment was the same as the one filed on March 4, 2010.

On April 14, 2010, Petitioner filed a Motion to Expedite Pending Post Conviction Relief Action. (Supp. App. 115-20). On April 25, 2010, Petitioner filed yet another Amended Application for Post-Conviction Relief. (Supp. App. 121-136; Attachment No. 21).

On June 20, 2011, the PCR court filed its final order. (App. 253-61, Attachment No. 22). In the final order, the PCR court stated this matter came before it pursuant to an application for post-conviction relief filed December 30, 2008. (App. 253). The State made its Return and Motion to

15

Dismiss on June 15, 2009, requesting that the application be denied and summarily dismissed. Id. It was noted that the PCR court issued a conditional order of dismissal dated June 22, 2009, provisionally denying and dismissing this action. (App. 253). The Petitioner was given twenty (20) days from the date of service of said order in which to show why the dismissal should not become final. Id. The court found that Petitioner responded to the conditional order by way of numerous documents submitted both through counsel and *pro se*. (App. 253). The court found the responses attempted to add allegations unsuitable for PCR, Petitioner had failed to set forth any reason why the conditional order of dismissal should not be instituted as the final order, and, for the reasons set forth in the conditional order of dismissal, the application for PCR was  denied and dismissed with prejudice. (App. 261). Specifically, the PCR court held the following in the final order of dismissal:

> Applicant responded to the Conditional Order of Dismissal by way of numerous documents submitted both through counsel and pro se. These responses have all attempted to add allegations unsuitable for Post Conviction Relief and therefore Applicant has failed to set forth any reason whey the Conditional Order of Dismissal should not be instituted as the Final Order.

(Tr. 253).

After listing the documents submitted by Plaintiff with his new contentions, the court found:

> Of all of these responses submitted by Applicant, only two (2) documents constitute a valid response to the Conditional Order of Dismissal while the remaining are all merely amendments to applicant's application for Post Conviction Relief. Applicant has alleged that he was entitled to a hearing to ascertain the retroactivity of the decision in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183 (2005). The remaining persistently filed responses are in fact merely amendments to his application for post conviction relief, including his allegations of ineffective assistance of counsel provided by trial counsel (James Bell, James Stoddard and Dwight Moore) and counsel on remand (Tara Dawn Shurling) based on their failure to adequately litigate his claims, failure to argue violation of separation of powers, failure to raise a fraud claim against the Solicitor's office and failure

to argue a retroactivity defense. Additionally, Applicant alleged trial counsel was ineffective for failing to object to sentencing based on <u>Roper</u>.

Clearly based on the transcripts of all of the prior hearings, the application of <u>Roper</u> to Applicant's case was thoroughly considered on several levels of the Applicants legal journey, including the PCR hearing, the resentencing hearing and the PCR appeal before the Supreme court.

. . .

Further, at the appeal, the Supreme Court found that, although <u>Roper</u> did apply to applicant's case, he had already received the benefit of his bargain and was therefore not entitled to a new trial. . . The issue of whether <u>Roper</u> applied was clearly and unequivocally raised by Applicant's resentencing counsel and was ruled upon at the resentencing hearing. That decision was affirmed by the Supreme Court of South Carolina in the opinion affirming Applicant's resentencing order . . . Therefore, the proper issue raised by Applicant in his response to the Conditional Order in regards to the application of <u>Roper</u> has been raised and ruled upon by the Supreme Court of this state during the course of his appeal. Additionally, the Supreme Court held that because Applicant was not sentenced to death, his argument that the <u>Roper</u> ruling meant the State court not abide by the plea agreement was without merit.

. . .

... the essence of Applicant's post conviction relief claims were already raised and ruled upon in Applicant's direct appeal. Counsel clearly raised the issue that Applicant was no longer subject to the death penalty and the Supreme Court found that his reliance upon this change in law was misplaced because Applicant still received the benefit of his bargain. This allegation has already been fully litigated. In summary, all of the responses submitted by Applicant hinge on the retroactive application of <u>Roper</u> to his plea negotiations and voluntariness of his plea (i.e. Due Process violation in the Supreme Court's failure to retroactively apply standards set by <u>Roper</u>: entitlement to a new hearing to ascertain the retroactivity and application of <u>Roper</u> ineffective assistance of plea counsel and resentencing counsel for a failure to raise issue of retroactivity applying <u>Roper</u>; fraud by the solicitor during plea negotiations for not maintaining the benefit of Applicant's bargain; newly discovered evidence in the violation of separation of powers based on Judge's usurpation of power in failing to apply <u>Roper</u>; and violation of Equal Protection Clause of the 14th Amendment under <u>Roper</u>). Applicant's allegations in regards to application of <u>Roper</u> are barred from being

17

reheard by this Court by the doctrine of *res judicata*. . . . The Applicant had a full opportunity to litigate these issue raised in the above mentioned responses during his resentencing hearing and subsequent direct appeal from his resentencing hearing. . . Therefore, this Court finds that all allegations/responses submitted by Applicant with regards to <u>Roper v. Simmons</u>, 543 U.S. 551 (2005) are barred by *res judicata* and are therefore not material issues of fact sufficient to show why the Conditional Order of Dismissal would not become final.

(Tr. 258-259).

<u>Re-sentencing PCR appeal</u>

Petitioner timely served and filed a notice of appeal on June 24, 2011. (Attachment No. 22). He also submitted an Amended Notice of Appeal on July 28, 2011. (Attachment No. 23). On appeal, Petitioner was represented by Robert M. Pachak, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense. (See Attachment No. 24). Petitioner's appeal to the PCR Court's Order was perfected with the filing of a <u>Johnson</u> Petition for Writ of Certiorari. (Attachment No. 24). In the <u>Johnson</u> Petition, counsel argued there was insufficient evidence to support the PCR judge's findings that Petitioner's allegations relating to the application of <u>Roper v. Simmons</u> were barred by the doctrine of *res judicata*. Petitioner filed a *pro se* response to the <u>Johnson Petition</u> for Writ of Certiorari. (Attachment No. 27). In the *pro se* response, Petitioner contended there was no evidence to support the PCR judge's findings that petitioner's allegations relating to the application of <u>Roper v. Simmons</u> were barred by being heard because of the doctrine of *res judicata*.

By Order filed July 24, 2012, the South Carolina Supreme Court transferred Petitioner's PCR appeal to the South Carolina Court of Appeals. (Attachment No. 28). By Order filed July 9, 2013, the PCR appeal was dismissed by the South Carolina Court of Appeals. (Attachment No. 29). The

18

Remittitur was issued on July 25 , 2013. (Attachment No. 30 ).

Third PCR Action

On August 17, 2012, Petitioner filed an Application for Post-Conviction Relief (2012-CP-43-1648), asserting plea counsel was ineffective under Lafler v. Cooper and Missouri v. Frye; and that the transfer laws for juveniles when Petitioner was prosecuted violated the Eighth Amendment of the U.S. Constitution. (Attachment No. 31). The State served its Return and Motion to Dismiss on December 4, 2012. (Attachment No. 32). On January 10, 2013, the PCR Court filed its Conditional Order of Dismissal. (Attachment No. 33). The Court found that the current application for post-conviction relief must be summarily dismissed because it was successive to his prior application for post-conviction relief. The Court found, further, that this Application for Post-Conviction Relief should be summarily dismissed for failure to comply with the filing procedures of the Uniform Post-Conviction Procedure Act. S.C. Code Ann. § 17-27-10 to -160. Additionally, this Court found this application was barred under the doctrine of *res judicata*. *Res judicata* prohibits subsequent actions by the same parties on the same issues. Bell v. Bennett, 307 S.C. 286, 414 S.E.2d 786 (Ct. App. 1992). On September 10, 2013, the PCR Court filed its Final Order of Dismissal. (Attachment No. 36). It was ordered that for the reasons set forth in the PCR Court's Conditional Order of Dismissal, the Application for post-conviction relief was thereby denied and dismissed with prejudice. The Final Order of Dismissal was served on Petitioner on September 13, 2013. (Attachment No. 37).

Prior Federal Habeas Action

On February 5, 2009, Petitioner filed a federal habeas action in this Court. [C/A #4:09-cv-01159-PMD, Docket Entry #1]. An amendment to the Petition was filed on February 21, 2009. [C/A #4:09-cv-01159-PMD, Docket Entry #8]. By Order filed November 10, 2009, the habeas petition was dismissed without prejudice and without service of process. Dingle v. Stevenson, 772 F.Supp. 2d 734 (D.S.C. 2009). In the order dismissing the habeas petition, Judge Duffy held the following:[6]

> Petitioner's first three grounds for habeas relief essentially all argue that the circuit court should have granted Petitioner a new trial and should have allowed Petitioner to withdraw his guilty plea because Petitioner was no longer receiving the benefit of his plea bargain because a main factor underlying Petitioner's decision to plead guilty, the possibility of the death penalty, was declared unconstitutional for minors by the Supreme Court in Roper v. Simmons ten years after Petitioner's plea. The South Carolina Circuit Court and Supreme Court found Roper v. Simmons to be inapplicable to Petitioner's case, and the court agrees.
>
> . . .
>
> Other courts have found that the Supreme Court's decision in Brady v. United States, 397 U.S. 742 (1970) supports the position that Roper is inapplicable to cases where a minor was facing the death penalty but pled guilty in exchange for a lesser sentence. . . .The court finds that under the reasoning of Brady, Petitioner's guilty plea is not invalid merely because Petitioner pled guilty to avoid the possibility of a death penalty, a possibility that no longer exists in light of Roper. Therefore, the court finds Petitioner's first three grounds for habeas arguing that Petitioner is entitled to withdraw his guilty plea in light of Roper to be meritless.

(Dingle v. Stevenson, supra).

Petitioner filed a Notice of Appeal on November 19, 2009. [C/A #4:09-cv-01159-PMD,

---

[6] Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970).

Docket Entry #25]. He subsequently filed a Motion to Alter or Amend Judgment on November 23, 2009. [C/A #4:09-cv-01159-PMD, Docket Entry #29], which was denied on November 25, 2009. [C/A #4:09-cv-01159-PMD, Docket Entry#30]. A revised Notice of Appeal was filed on November 30, 2009. [C/A #4:09-cv-01159-PMD, Docket Entry #32]. An amendment to the Notice of Appeal was filed on December 7, 2009. [C/A #4:09-cv-01159-PMD, Docket Entry #35]. In an unpublished opinion filed May 3, 2010, the United States Court of Appeal for the Fourth Circuit dismissed Petitioner's appeal,  Dingle v. Stevenson, 376 F. App'x 285, 286 (4th Cir. 2010), after it independently reviewed the record and concluded that Petitioner had not made the requisite showing. Accordingly, the Court of Appeals denied a certificate of appealability and dismissed the appeal.

Petitioner filed a Petition for Rehearing *en banc* on May 17, 2010. [C/A No. 09-8100, Docket Entry #25-2]. The Fourth Circuit denied the petition by Order filed June 21, 2010. C/A No. 09-8100, Docket Entry #28]. The mandate was filed on June 29, 2010. C/A No. 09-8100, Docket Entry #29]. Petitioner filed a Petition for Writ of Certiorari with the United States Supreme Court on August 19, 2010. By Order filed November 1, 2010, the Petition was denied. (Attachment No. 38). Petitioner subsequently filed a Petition for Rehearing on November 12, 2010. The Petition for Rehearing was denied by the United States Supreme Court on December 13, 2010. (Attachment No. 39).

## II. HABEAS ALLEGATIONS

Petitioner filed his petition on September 13, 2013, in which he raises the following allegations, quoted verbatim:

GROUND ONE:  Unconstitutional guilty plea.

Supporting Facts:  Petitioner asserts that he was a seventeen year old minor when he was charged in Sumter County for murder and related

charges. Petitioner asserts he pleaded guilty on April 17, 1995, because the prosecutor for the state had sought the death penalty against Petitioner in violation of the Eighth and Fourteenth Amendments. Petitioner was subsequently granted PCR. Petitioner asserts that the United States Supreme Court held in Roper v. Simmons that the Constitution prohibits the death penalty for offenders who were below eighteen years old at the time of their crimes. Thus, Petitioner alleges that his guilty plea, convictions and the current sentence are unconstitutional.

GROUND TWO:        Ineffective assistance of counsel.

Supporting facts:        Petitioner asserts that counsel came to the Sumter County Jail and informed him that the state had made a plea offer. The plea offer entailed "Petitioner pleading guilty to manslaughter and receiving a twenty (20) year sentence for manslaughter with all other counts of the indictments from both Sumter and Lee Counties to receive an equivalent sentence of twenty (20) years or lesser and to be served concurrent with the manslaughter charge." Petitioner asserts that he instructed his attorney to accept the plea. Petitioner alleges counsel was ineffective for not having the plea offer made to Petitioner enforced.

GROUND THREE:        Ineffective assistance of counsel.

Supporting facts:        Petitioner asserts that counsel Tara Dawn Shurling rendered ineffective assistance of counsel by "deviating from the findings of the (PCR) Judge in this case, in which, were specified in the (PCR) Judge's order (Case #: 96-CP-43-113). Ms. Shurling, on remand and appeal argued that the prosecutor for the state in this case 'Breached' the plea agreement in this case, when in fact, the (PCR) Judge in the Court's order dated December 5, 1997, granting Petitioner's relief, did not find a plea breach by the prosecutor for the state in this case." Petitioner asserts a violation of the standards set forth in Strickland v. Washington. Petitioner asserts that had "Ms. Shurling on remand argued the findings of the (PCR) Judge in which were the law in this case, that, the guilty pleas petitioner entered in the Circuit court of the city of Sumter, South Carolina on April 17, 1995, were not entered knowingly, voluntarily and intelligently, due to ineffective assistance of counsel and erroneous information relayed to

petitioner by both Attorney's counsel and the sentencing judge. There is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

GROUND FOUR:     Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the U.S.

Supporting Facts:     The decision of the (PCR) Judge in this case is a clear deviation of no less than six (6) Supreme Court precedented cases involving ineffective assistance of counsel and guilty pleas that were not entered: knowingly, voluntarily and intelligently. "To order a re-sentencing of Petitioner in this case instead of a new trial, is a deviation from established precedent of the United States Supreme Court, and clearly goes contrary to federal law. . ."

GROUND FIVE:     Violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution by the State Courts in this case renders Mr. Dingle's conviction and sentence unconstitutional and entitles him to habeas relief.

Supporting Facts:     "Petitioner in the present case is a part of a certain class of offenders who are exempted from the death penalty, and to have threaten 'Petitioner with the death penalty and secure a conviction and sentence by way of this from of coercion clearly renders Mr. Dingle's conviction and sentence unconstitutional and void, and further violates the Equal Protection Clause of the 14th Amendment to the United States Constitution, in that, each and every minor in the State of South Carolina who were faced with similar circumstances to Petitioner's and their cases had not become final at the time United States held, 'the Eighth (8th) and Fourteenth (14th) Amendments to the United States Constitution forbid imposition of the death penalty for offenders who were under eighteen (18) years old at the time of their crimes.' Roper v. Simmons, 543 U.S. 551 (2005), benefitted from the Roper decision. All cases involving offenders below the age of eighteen (18) at the time of their crimes, and the state courts were seeking the the death penalty in these cases."

GROUND SIX:     (PROSECUTORIAL MISCONDUCT) U.S. v. Flarharty, Marshall v. Hendricks, U.S. Higgs, U.S. v. Williams, U.S. v.

23

> Beverly, U.S. v. Mabrook, U.S. v. Conrad, Beardslee v. Woodford, and U.S. v. Kravhuk renders Mr. Dingle's (Petitioner) conviction and sentence unconstitutional and entitles him to habeas relief.

Supporting Facts:     The prosecutor in this case caused petitioner to act to his own detriment by entering into negotiations that were unconstitutional and violated petitioner's due process rights.

(Petition).

# III.  STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

Thus, a writ may be granted if a state court "identifies the correct principle from [the Supreme] Court's decisions but unreasonably applies that principle of law" to the facts of the case. Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (citing Williams v. Taylor, 529 U.S. 362, 413 (2000)). However, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." Id.  "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone

24

v. Polk, 392 F.3d 691, 719 (4th Cir. 2004). Further, factual findings "made by a State court shall be presumed to be correct," and a Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

# IV. PROCEDURAL BAR

The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, 477 U.S. 533 (quoting Wainwright v. Syke s, 433 U.S. at 84 (1977)). See also

Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas Petitioner can show (1) cause for his failure to raise the

claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be

ignored and the federal court may consider the claim. Where a Petitioner has failed to comply with

state procedural requirements and cannot make the required showing(s) of cause and prejudice, the

federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).


## V.  ANALYSIS

Respondent asserts that Petitioner technically meets the exhaustion requirement of 28 U.S.C.

2254(b)(1)(A). However, Respondent argues that Grounds Two, Three, Four, Five, and Six raised

in the habeas petition are procedurally barred. In his response to the motion for summary judgment,

Petitioner argues that they are not procedurally barred.


Ground Two

In Ground Two, Petitioner asserts that his original trial counsel were ineffective in not

ensuring that his agreement to plea to voluntary manslaughter, along with a sentence on all other

charges, for twenty years was properly entered and enforced.  Respondent argues that this claim

could have been raised in Petitioner's first PCR action, but was not raised and is procedurally barred.

This issue was not raised in Petitioner's first PCR action. In the re-sentencing PCR action,

Petitioner attempted to raise this issue as an amendment after he was given twenty days to respond

to the conditional order of dismissal. However, it was not raised in the Johnson petition on appeal.

Therefore, this issue is procedurally barred. Petitioner has not demonstrated cause and prejudice for his procedural default of this claim.

Ground Three

In Ground Three, Petitioner asserts that counsel (Shurling) on re-sentencing and the re-sentencing appeal was ineffective for arguing that the plea agreement had been breached by the prosecutor instead of arguing that trial counsel was ineffective in not providing accurate information to him about sentencing. Respondent asserts that this issue was not raised in the re-sentencing PCR application and was not ruled upon by the second PCR court rendering it procedurally defaulted.

This issue was not raised in the re-sentencing PCR application. However, Petitioner attempted to raise this issue as an amendment to his petition after he was given twenty days to respond to the conditional order of dismissal. It was dismissed as barred by *res judicata* as it pertained to the Roper argument. Even assuming *arguendo* that the re-sentencing PCR judge ruled on this issue, it was not raised in the Johnson petition. Therefore, this issue is procedurally barred from federal habeas review. Petitioner has not demonstrated cause and prejudice for his procedural default of this claim.

Ground Five

In Ground Five, Petitioner asserts that his convictions and sentences violated his right to equal protection under the law as he is part of a class of juvenile offenders who were threatened with the death penalty as a means of forcing a plea to some lesser sentence *prior to the ruling in Roper v. Simmons*. (emphasis added). Respondent argues that this claim was not ruled upon by the PCR

27

court and was not preserved for review for the South Carolina Supreme Court. Thus, Respondent asserts this issue is procedurally defaulted.

This issue was not raised in the re-sentencing direct appeal and not ruled on by the state's highest court.[7]  Thus, this issue is procedurally barred. Petitioner has not demonstrated cause and prejudice for his procedural default of this claim.

Ground Six

In Ground Six, Petitioner argues prosecutorial misconduct. Petitioner asserts that the prosecutor caused him to act to his own detriment by entering into negotiations that were unconstitutional and violated petitioner's due process rights. Petitioner argues that the solicitor lied to the plea court at the time of the guilty plea when he indicated that he had received approval from the Attorney General to consent on the state's behalf to consider an untimely motion for reconsideration of the sentence on the Lee County drug conviction. Petitioner alleges that the prosecutor informed the plea court that by re-sentencing him on the Lee County drug conviction and running it concurrently with the murder case, it would allow Petitioner to receive parole. Respondent argues that this issue is procedurally

barred.

This issue was not raised in the direct appeal and not ruled on by the state's highest court.

_____

[7] It is noted that Petitioner did attempt to raise an equal protection claim in one of his "amended" amendments to his PCR application. However, as noted by the PCR court, the issue was barred by *res judicata* because it was not properly raised at re-sentencing or on re-sentencing direct appeal.

28

Therefore, it was not a proper issue for PCR.[8] Thus, this issue is procedurally barred. Petitioner has not demonstrated cause and prejudice for his procedural default of this claim.

Accordingly, these claims are procedurally barred from federal habeas review in that they were not raised and/or ruled upon by direct appeal or by the PCR court. Even if they were raised at PCR, as noted by the PCR court, they were barred by *res judicata*. Thus, these issues are procedurally defaulted. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (S.C.2007). Petitioner has not demonstrated cause and prejudice for his procedural default of this claim. Plyer v. State, 424 S.E.2d 777 (1992); Bostick v. Stevenson, 589 F.3d 160, 164 (4th Cir. 2009); Marlar, supra; Coleman, supra. Accordingly, it is recommended that Grounds Two, Three, Five, and Six be dismissed as procedurally barred.

Ground Four

In Ground Four, Petitioner argues that his due process rights were violated because he was not granted a new trial, but was provided the sentence he had originally agreed to in his guilty plea. Respondent asserts that this is a freestanding claim that could have been asserted at the re-sentencing level and then raised on direct appeal. Respondent argues that this claim is procedurally barred.

Petitioner did not raise this issue at the re-sentencing level as a due process violation and did not raise it in the re-sentencing direct appeal. Petitioner's arguments in state court were based solely on South Carolina law. As Petitioner's appeal from the re-sentencing complained about the trial judge abusing his discretion in refusing to allow Petitioner to withdraw his guilty plea in a purported

---

[8] It is noted that Petitioner did attempt to raise a prosecutorial misconduct claim in one of his "amended" amendments to his PCR application. However, as noted by the PCR court, this was not raised in the direct appeal.

violation of state law, the undersigned finds that federal habeas relief is not available See Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."). To the extent Petitioner is arguing in his federal habeas petition that denying him a new trial violated his due process rights, the claim was not raised before and/or ruled on by the South Carolina appellate courts. Therefore, this issue is procedurally barred from federal habeas review. See Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir.1999); see also S.C.Code Ann. § 17–27–90, –45; Aice v. State, 305 S.C. 448, 409 S.E.2d 392, 394 (S.C.1991); S .C.App.Ct. R. 203(d)(3), 243; Coleman, 501 U.S. 722 (holding issue not properly raised to state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas). Petitioner has not demonstrated cause and prejudice for his procedural default of this claim. Accordingly, Respondent's motion for summary judgment should be granted with respect to Ground Four.

Ground One

In Ground One, Petitioner asserts that his guilty plea was unconstitutional because he was not subject to the threat of the death penalty when he was re-sentenced. Respondent argues that Petitioner cannot show there is any merit to this claim and refers to the court's reasoning in the order dismissing his first federal habeas petition. Respondent asserts that Petitioner fails to show that a state court made an unreasonable determination of the facts in denying relief upon this claim, and it should be denied and dismissed with prejudice.

The district judge's order dismissing his first federal habeas petition[9] set forth the following

---

[9] Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970) (The court may take judicial notice of its own records.).

reasoning with respect to dismissing this issue:

The South Carolina Circuit Court and Supreme Court found <u>Roper v. Simmons</u> to be inapplicable to Petitioner's case, and the court agrees. "Petitioner, although a minor at the time of the commission of the offense in question, was not sentenced to death and therefore the constitutional right recognized in <u>Roper</u> is clearly inapplicable." <u>Schane v. Cain</u>, No. 07–1068, 2007 WL 4967081, at*3(W.D.La. Oct.24, 2007) (citing <u>In re Hill</u>, 437 F.3d 1080, 1082 n. 1 (11th Cir.2006); <u>Culpepper v. McDonough</u>, 2007 WL 2050970, at *3 (M.D.Fla. July 13, 2007) ("Although <u>Roper</u> addresses a new and distinct constitutional right, the <u>Roper</u> decision is to be narrowly construed to include capital cases involving death sentences for minors. The constitutional claim in <u>Roper</u> sets a clear precedent by abolishing the execution of minors, but it does not particularly address the application of that constitutional claim to mandatory life sentences pertaining to minors."); <u>Smith v. Howes</u>, 2007 WL 522697, at *2 (E.D.Mich. Feb. 14, 2007) ("In <u>Roper</u> , the Supreme Court held that execution of individuals who were under 18 years of age at the time of their capital crimes violates the Eighth Amendment's prohibition against cruel and unusual punishment. Petitioner is not facing execution. Therefore ... <u>Roper</u>... does not announce a constitutional right newly recognized by the Supreme Court which is relevant to Petitioner's case")). Other courts have found that the Supreme Court's decision in <u>Brady v. United States</u>, 397 U.S. 742,90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) supports the position that <u>Roper</u> is inapplicable to cases where a minor was facing the death penalty but pled guilty in exchange for a lesser sentence. See <u>Hill v. Sec'y, Fla. Dep't of Corr.</u>, No. 2:06 –CV–277–FTM–29DNF, 2009 WL 2256024 (M.D.Fla. July28, 2009); <u>Wade v. Commonwealth</u>, No.2006–CA–001195–MR, 2007 WL4210486 (Ky.App. Nov. 30, 2007). In <u>Brady</u>, after the Supreme Court had ruled that the death penalty was no longer a possible sentence under the federal kidnapping statute, a federal criminal defendant sought relief under § 2255 from his kidnapping guilty plea, which was given in part to avoid the possibility of a death sentence. <u>Brady</u>, 397 U.S.742, 90 S.Ct. 1463, 25 L.Ed.2d 747. The Supreme Court held that "a voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." <u>Id</u>. at 756, 90 S.Ct. 1463. In addition, the Supreme Court reiterated the rule that "a plea of guilty is not invalid merely because entered to avoid the possibility of the death penalty." <u>Id.</u> at 755, 90 S.Ct. 1463. The court finds that under the reasoning of <u>Brady</u>, Petitioner's guilty plea is not

> invalid merely because Petitioner pled guilty to avoid the possibility
> of a death penalty, a possibility that no longer exists in light of Roper.
> Therefore, the court finds Petitioner's first three grounds for habeas
> arguing that Petitioner is entitled to withdraw his guilty plea in light
> of Roper to be meritless.

Dingle v. Stevenson, 772 F. Supp. 2d 734, 740-41(D.S.C. 2009).[10]

The district judge's order was entered without prejudice. Thus, even if Petitioner is not precluded from litigating this issue again,[11] this court reaches the same conclusion for the same reasons as set forth in Judge Duffy's order of November 10, 2009, set forth above with respect to Roper being inapplicable to Petitioner's case. Therefore, it is recommended that this issue be denied and dismissed.

## VI. CONCLUSION

Based on the foregoing, it is RECOMMENDED that Respondent's motion for summary judgment (docket entry #34) be GRANTED and the Petitioner's Petition for Writ of Habeas Corpus be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,

Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

September 16, 2014
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[10] See also Hudgins v. Cartledge, CA 5:10-3282-JFA-KDW, 2012 WL 761673 (D.S.C. Mar. 8, 2012) appeal dismissed, 476 F. App'x 418 (4th Cir. 2012) cert. denied, 133 S. Ct. 1463, 185 L. Ed. 2d 370 (U.S. 2013) (also finding Roper does not invalidate plea agreement).

[11] See Mann v. Haigh, 120 F.3d 34, (4th Cir. 1997) (issue and claim preclusion not applicable where prior petition dismissed without prejudice).